| | |
|---|---|
| CHRISTOPHER ANDERSON, | |
| **Plaintiff,** | |
| v. | **ORDER** |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY | |
| **Defendant.** | |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 16).  Plaintiff filed his Motion for Summary Judgment on November 30, 2020. (Doc. No. 16). Through counsel, Plaintiff seeks judicial review of an unfavorable administrative decision on his application for Supplemental Security Income under 42 U.S.C. § 405(g).[1]  Plaintiff alleges the Administrative Law Judge ("ALJ") committed harmful error because (1) he did not properly include an "accommodation for Mr. Anderson's need to elevate his frequently during the day in the residual functional capacity" and (2) failed to consider the relevant medical opinion evidence. (Doc. No. 17, p. 2).

Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is not supported by substantial evidence.  Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment (Doc. No. 18) and DENIES Plaintiff's Motion for Summary Judgment (Doc.

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

No. 16).  Therefore, the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

Plaintiff filed an application for disability benefits under Title II and Title XVI of the Social Security Act on January 9, 2017 with an alleged onset date of June 30, 2013. (Doc. No. 14-6, pp. 4, 13).  After Plaintiff's application was initially denied he requested a reconsideration of the decision. (Doc. No. 14-5, pp. 10, 12).  On August 2, 2017, Plaintiff requested a hearing by an administrative law judge. Id. at 30, 32.  A hearing was held on January 28, 2019. (Doc. No. 14-3, pp. 55-75).  On April 23, 2019, Administrative Law Judge Sherman D. Schwartzberg (ALJ) issued an unfavorable decision. Id. at 35.  On February 21, 2020, the Appeals Council (AC) denied Plaintiff's request for review, finding that additional evidence presented by the Plaintiff did not show a "reasonable probability that it would change the outcome of the" ALJ's decision. Id. at 2-4.

The ALJ made his decision after following the five-step evaluation process for disability claims under the Social Security Act ("The Act"). Id. at 38-47; see also 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ determined Plaintiff had not engaged in "substantial gainful activity" since the application date of his disability. Id. at 40.  At step two, the ALJ determined which of Plaintiff's impairments were classified as severe. Id. at 41, 20 C.F.R. §§ 404.1520(c).  The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy and obesity. Id.  At step three, the ALJ determined that none of Plaintiff's severe impairments, nor any combination of the impairments, met or medically equaled a *per se* disabled medical listing under 20 C.F.R. Part 404, Subpart P, Appendix. 1 ("Listings"). Id. at 42.  At step four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC"): "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional postural poses; no ropes ladders scaffolds; avoid concentrated exposure to vibrations and hazards; no non-physical

limitations." Id. at 42-45.  Finally, at step five, the Vocational Expert ("VE") testified that Plaintiff, with his current restrictions, was incapable of performing past relevant work as a Chef or Banquet Cook because the mental and/or physical demands of Plaintiff's past relevant work exceeded his current RFC. Id. at 45-46, 71-73.  In the alternative, in response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the VE testified that an individual with these same limitations could perform jobs for which work exists in significant numbers in the state and national economy. Id. at 73-74.  Thus, the ALJ concluded Plaintiff was not disabled, as defined in The Act. Id. at 47; (Doc. No. 14-4, p. 15).

Plaintiff has exhausted all administrative remedies and now appeals. (Doc. No. 1).  In Plaintiff's Memorandum in Support of Motion for Summary Judgment, he claims the ALJ's decision should be reversed and remanded because the ALJ erred by failing to properly include an accommodation for Plaintiff's need to elevate his legs frequently during the day in the RFC. (Doc. No. 17).  Additionally, Plaintiff claims the ALJ erred in its treatment of his treating physician's recommendations as medical opinion evidence. Id.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. §405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).  A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."

Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence" but "may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. §404.1520(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016).

The Fourth Circuit has held:

If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [his physical and mental] limitations [that

affect his ability to work].”

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in

original).

In Lewis, the Fourth Circuit explained the considerations applied before moving to step

four:

> [The RFC] determination requires the ALJ to “first identify the individual’s
> functional limitations or restrictions and assess his or her work-related abilities on
> a function-by-function basis, including the functions listed in the regulations.”
> Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996
> WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is
> complete, an ALJ may define the claimant’s RFC “in terms of the exertional levels
> of work, sedentary, light, medium, heavy, and very heavy.” SSR 96-8p, 1996 WL
> 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining
> “sedentary, light, medium, heavy, and very heavy” exertional requirements of
> work).
>
> When assessing the claimant’s RFC, the ALJ must examine “all of [the claimant’s]
> medically determinable impairments of which [the ALJ is] aware,” 20 C.F.R.
> §§ 404.1525(a)(2), 416.925(a)(2), “including those not labeled severe at step two.”
> Mascio, 780 F.3d at 635. In addition, he must “consider all [the claimant’s]
> symptoms, including pain, and the extent to which his symptoms can reasonably be
> accepted as consistent with the objective medical evidence and other evidence.”
> 20 C.F.R. §§ 404.1529(a), 416.929(a). “When the medical signs or laboratory
> findings show that [the claimant has] a medically determinable impairment(s) that
> could reasonably be expected to produce his symptoms, such as pain, [the ALJ]
> must then evaluate the intensity and persistence of [the claimant’s] symptoms so
> that [the ALJ] can determine how his symptoms limit his capacity for work.” 20
> C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to

perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work,

the ALJ proceeds to step five.

> “At step five, the burden shifts to the Commissioner to prove, by a preponderance
> of the evidence, that the claimant can perform other work that ‘exists in significant
> numbers in the national economy,’ considering the claimant’s residual functional
> capacity, age, education, and work experience.” [Mascio, 780 F.3d at 635]
> (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). “The
> Commissioner typically offers this evidence through the testimony of a vocational

expert responding to a hypothetical that incorporates the claimant's limitations."
Id.

Lewis, 858 F.3d at 862.

If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

In his Motion for Summary Judgment, Plaintiff contends the ALJ committed reversible error by failing to include an accommodation for Plaintiff's need to elevate his legs frequently during the day in the RFC assessment and for failing to consider the relevant medical opinion evidence. (Doc. No. 17, p. 2). For its part, the Government argues its decision to not award benefits is supported by substantial evidence in the record which include: (i) State Agency ("SA") Consultants substantially support the ALJ's RFC, (ii) left foot elevation notations are due to Plaintiff's diabetic mismanagement, *not* DVT, and (iii) post-decisional opinions from Dr. Whiteman do not show reasonable probability of changing the outcome of the ALJ's decision (Doc. No. 19).

Plaintiff argues the ALJ failed to specifically provide a reasoned explanation for not including a leg elevation accommodation in the RFC or in the alternative failed explain why one was not necessary. Plaintiff's testimony and some medical records indicate he has a history of DVTs dating back to high school which have intermittently limited his ability to drive, walk, and even stand. (Doc. No. 17, p. 4). Plaintiff argues the ALJ's failure to include his feet elevation accommodation was harmful because of the various medical opinions directing him to do so. See (Doc. No. 14-8, p. 343, 363, 611). Finally, Plaintiff argues that the "ALJ must consider all medical opinions given in the case, assess the weight given to each opinion, and if a medical opinion conflicts with the ALJ's RFC, the conflict must be explained in the decision." See (Doc. No. 17, p. 9). Therefore, Plaintiff alleges the ALJ committed serious error due to the specific citation of "a

6

lack of medical opinions supporting the Plaintiff's claim of disability in the decision." (Doc. No. 17, p. 11).

Defendant counters that the RFC was supported by substantial evidence from the medical record despite the allegation that the ALJ did not provide for an alleged need to elevate the Plaintiff's feet. (Doc. No. 19, p. 7). Defendant reiterates that the ALJ found Plaintiff was able to perform a restricted range of light exertional work; however, he was still "capable of all self care, is able to drive, go out alone, shop in stores, [and] pay bills. (Doc. No. 14-3, p. 42) (alteration in original). Defendant argues the ALJ provided specific references to the medical evidence provided by the SA consultant examiners—which concluded the Plaintiff's residual functional capacity was "not disabled." See Doc. No. 14-4, pp. 10-11, 44-45; Doc. No. 14-8, pp. 102, 106. Finally, Defendant notes the ALJ accorded "substantial weight" to the SA consultants because they are, by regulation, "highly qualified . . . experts in Social Security disability evaluation," and their opinions constitute medical evidence which is considered in the disability determination process. 20 C.F.R. § 404.1527(f)(2)(I).

In reviewing this administrative decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgement for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 2013); Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are *supported* by *substantial evidence*, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

The parties agree that substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015); (Doc. Nos. 17 at 3,

19 at 5). The issue here is whether the ALJ's decision met this standard, i.e., whether the ALJ's findings based on the evidence were ones that a "reasonable mind might accept."

The Court finds that the ALJ's RFC finding is supported by substantial evidence. First, the ALJ summarized Plaintiff's testimony as to his physical impairments at the administrative hearing. (Doc. No. 14-3, p. 43). Next, the ALJ compared this testimony with the medical record and concluded the impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." Id. The ALJ ultimately determined Plaintiff could perform light work. Id. at 42.

The ALJ highlighted two major factors which weighs against considering Plaintiff's allegations as strong evidence in his favor. First, he noted the alleged limited daily activities cannot be objectively verified with any reasonable degree of certainty. Id. at 43. Secondly, the ALJ found even *if* Plaintiff was limited as alleged, it is difficult to attribute the degree of limitation to his actual medical condition—as opposed to other reasons—in light of the relatively weak medical evidence and other factors. Id. at 43-44.

The ALJ specifically identified the factors in the medical evidence that supported the finding that Plaintiff was not totally disabled. The ALJ found the objective medical evidence on the record reveals the Plaintiff has a history of diabetes mellitus, with poor control due to *noncompliance* with monitoring and follow up. Id.; (Doc. No. 14-8, p. 5). The ALJ then referenced the Haywood Regional Medical Center discharge summary noting the Plaintiff was seen emergently in February 2017 for nausea and intractable vomiting which were diagnosed as acute ketoacidosis due to starvation/insulin *noncompliance*. (Doc. No. 14-8, p. 94-101). Similarly, Plaintiff's ongoing general practitioner notes *also* reflect *noncompliance* with diabetes mellitus monitoring and medication. Id. at 110-134; 147-335; 336-428.

Additionally, the ALJ found Plaintiff has a history of DVT in his lower extremities but his blood clots are being properly managed with anti-coagulant management. Id. Plaintiff was also found to have decreased sensation to touch in his lower extremities; however, he has a normal range of motion and "5/5 strength in all extremities." (Doc. No. 14-3, p. 44). With regard to Plaintiff's lower extremities, the ALJ cited the North Carolina Department of Health and Human Services Disability Determination Services consultative exam noting, Plaintiff "does not need a cane to ambulate and can stand on his toes and heels, squat and rise and tandem walk." (Doc. No. 14-8, p. 102-107).

The ALJ also found Plaintiff does not have the amount or types of medical treatment you would generally see for a totally disabled individual. (Doc. No. 14-3, p. 45). He noted Plaintiff's relatively infrequent trips to the doctor for the alleged disabling symptoms, significant gaps in the claimant's history of treatment, and a lack of restrictions placed upon the Plaintiff by the treating doctor. Id. Plaintiff argues because PA Batten's directions were to elevate feet "frequently to treat his PVD symptoms" and the ALJ did not view it as a valid restriction the case must be remanded. (Doc. No. 17, p. 10). This argument is unavailing.

On January 9, 2019, Plaintiff was being treated by PA Batten for nine different problems; none of which were for DVT directly. (Doc. No. 14-8, pp. 704-705). PA Batten's notes under "Problem #5: Diabetic foot ulcer" reflect that he "urged him [Plaintiff] to elevate feet, move legs/feet frequently, quit smoking . . ." (Doc. No. 14-8, p. 363) (alteration in original). This suggests PA Batten's foot elevation direction was for the purpose of treating the diabetic foot ulcer as the primary medical issue *not* DVT. Additionally, the medical record does not reflect that this was a long-term medical directive, as opposed to a short-term treatment plan for the acute foot ulcer injury.

As to evidence dated after the ALJ's decision, if the claimant submits additional evidence

to the AC, the AC will grant the claimant's request for review only if, in addition to meeting several other requirements, there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a) (5), (b). Effective January 1, 2017, the reasonable probability standard is a new regulatory to be applied in determining if remand is warranted.

The alleged new evidence does not show a reasonable probability it would change the outcome of the ALJ's decision. Dr. Whiteman's notes from May 28, 2019, confirms that Plaintiff suffers from diabetes mellitus; however, they also clearly support the Defendant's argument of diabetic mismanagement and noncompliance. See (Doc. No. 19, p. 14). During that same visit, for diabetes mellitus and DVT, Plaintiff *denied pain* but had numbness. Id. Nevertheless, on June 12, 2019, Dr. Whiteman wrote a medical note for Plaintiff stating "due to his complex medical needs and chronic pain, he [plaintiff] is limited in the amount, and kind, of work that he would be able to undertake. (Doc. No. 14-3, p. 24). Additionally, Dr. Whiteman's own notes state Plaintiff "does not use a cane or other assistive device for ambulation" yet then provides Plaintiff with a prescription for "1 walking cane use daily." Id. The contradictions between the medical notes and actions of Dr. Whiteman could reasonably affect their credibility and therefore be rejected the ALJ on remand. See Russell v. Barnhart, 58 Fed. Appx. 25, 28-30, 2003 WL 257494 at **3-4 (4th Cir. 2003) (upholding ALJ's rejection of treating physician opinion on basis that it was "unsupported by the treatment records"); Byrd v. Apfel, 1998 WL 911718 at *4 (4th Cir. 1998) (affirming ALJ's determination that treating source opinion "was not supported by his own clinical findings and objective evidence").

For the reasons set forth above, it is clear the ALJ reviewed the full record and considered the foot elevation medical opinion. The Court finds the ALJ's determination is legally sufficient and supported by substantial evidence. Accordingly, the Court GRANTS Defendant's Motion for

Summary Judgment (Doc. No. 18) and DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 16). Therefore, the Commissioner's decision is AFFIRMED.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED; and the Commissioner's decision is AFFIRMED.

The Clerk is directed to send copies of this Order to counsel for the parties.

**IT IS SO ORDERED.**

Signed: June 8, 2021

Frank D. Whitney
United States District Judge